## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2020, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Antonio G. Sisson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

C.S. & K.S. (Minor Children),

and

K.W.S. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

October 16, 2020

Court of Appeals Case No.
20A-JT-1041

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge
The Honorable Amanda Yonally, Magistrate

Trial Court Cause Nos.
18C02-1909-JT-204
18C02-1909-JT-205

**Weissmann, Judge.**

[1]  K.W.S. (Mother) appeals the trial court's order terminating the parent-child relationship between Mother and her two children, C.S. and K.S. (the Children). Mother argues that the evidence is insufficient to support the termination. Finding the evidence sufficient, we affirm.

# Facts

[2]  Mother has two children—C.S., born in August 2014, and K.S., born in September 2017.[1] After K.S.'s birth in September 2017, the Department of Child Services (DCS) received a report alleging that Mother had used illegal substances while pregnant. Mother tested positive for methamphetamine and buprenorphine (commonly known as Suboxone) on the day of K.S.'s birth. On September 27, 2017, DCS removed the Children from Mother's care and custody, and they have never been returned.

[3]  On October 2, 2017, DCS filed a petition alleging that the Children were children in need of services (CHINS). At the initial hearing the next day, Mother admitted that the Children were CHINS and the trial court entered a CHINS adjudication. Mother specifically admitted that she had used buprenorphine, THC, and methamphetamine throughout her pregnancy; that she had used illicit substances while serving as the Children's primary caregiver; and that she believed she could benefit from substance abuse services. On

---

[1] The parent-child relationship between the children and their father was also terminated, but he did not appeal that order.

January 22, 2018, the trial court entered a dispositional decree ordering Mother to, among other things, refrain from drug use and participate with random drug screens, complete a substance abuse assessment and comply with any recommendations, and obey the law.

[4] Initially, Mother engaged with services and refrained from drug use. But in the summer of 2018, Mother stopped communicating with DCS and stopped providing drug screens. On September 14, 2018, Mother tested positive for methamphetamine. On October 3, 2018, Mother was arrested for possession of methamphetamine and neglect of a dependent[2] after the Children were found in a car with the parents, who did not have unsupervised parenting time.[3] The Children were not buckled into car seats and there was methamphetamine and a syringe in the car. Mother's October 4, 2018, drug screen was positive for methamphetamine. After she was released, Mother continued to visit consistently with the Children but did not participate consistently with other services. On April 8 and 18, 2019, Mother tested positive for methamphetamine.

[5] Mother was arrested in May 2019 and again tested positive for methamphetamine. She was later charged with attempted robbery and battery

---

[2] The State later added charges of possession of methamphetamine, unlawful possession of a syringe, and two additional counts of neglect of a dependent.

[3] Although the record does not contain a full recounting of this incident, the Family Case Manager explained that the Children were with the parents without supervision because "they were allowed by the family members who were to be supervising." Tr. Vol. II p. 105.

resulting in bodily injury. In November 2019, Mother pleaded guilty and received a four-year sentence, with two years suspended, meaning that her earliest possible release date is November 2020.[4] She has been incarcerated since May 2019.

[6] Mother has never participated with the recommended intensive outpatient treatment. She also was unable to secure stable housing and employment during the CHINS proceedings.

[7] On September 10, 2019, DCS filed petitions seeking to terminate the parent-child relationship between Mother and the Children. A factfinding hearing occurred on February 27, 2020, at which both the Family Case Manager (FCM) and Court Appointed Special Advocate (CASA) testified that the Children were thriving in their preadoptive foster home and bonded to their foster parents. The FCM and CASA both recommended that the parent-child relationship be terminated. On May 4, 2020, the trial court entered an order terminating the parent-child relationship. In pertinent part, it found as follows:

> 55. The child[ren] need[] a safe, stable, secure and permanent environment in order to thrive. Mother has not shown the inclination or ability to provide the child[ren] with such an environment.

---

[4] As part of Mother's plea agreement, the State dismissed the criminal charges from the October 2018 incident.

56. Despite the intervention of [DCS] and the Court, Mother has demonstrated an inability or unwillingness to remain sober and to obtain and maintain safe and appropriate housing for the child[ren]. Mother has failed to benefit from the services provided in order to alleviate the conditions that resulted in the child[ren]'s removal from the home and continued placement outside of the home.

57. Mother is currently incarcerated and unable to provide for the child[ren] due to her incarceration. Prior to her incarceration, Mother demonstrated a pattern of habitual substance abuse and was unable to maintain stable housing.

58. Mother has proven herself unwilling or unable to meet her parental responsibilities.

***

60. . . . [T]here is a reasonable probability that the conditions that resulted in the child[ren]'s removal and/or continued placement outside the home will not be remedied. Mother has not provided the child[ren] with safe and stable housing, and she is not in a position to do so at this time. Mother has not remedied her substance abuse problems. . . .

61. Mother is not in a position to provide care for the child[ren]. It is unreasonable to require the child[ren] to wait for Mother to demonstrate an ability to meet [their] needs upon her release from incarceration.

62. There is a reasonable probability that the continuation of the parent/child relationship herein poses a threat to the

well-being of the child[ren]. Although Mother is currently incarcerated, she had not benefitted from services to address her substance abuse or lack of housing prior to her incarceration. Based on Mother's habitual pattern of conduct, there is a substantial probability of future neglect if the petition for termination of parental rights is not granted.

Appealed Order p. 5. Mother now appeals.

# Discussion and Decision

[8] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (internal quotations omitted).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

(A)  that one (1) of the following is true:

    (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)  that one (1) of the following is true:

    (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[10] Mother primarily argues that the evidence does not support the trial court's conclusion that there is a reasonable probability that the conditions resulting in the Children's removal and continued placement outside of her care and custody will not be remedied. The reason for the Children's initial removal from Mother's care and custody was Mother's ongoing substance abuse; the reasons for their continued removal from Mother were Mother's substance abuse, instability, incarceration, and lack of participation with court-ordered services.

[11] The record reveals that Mother had periods of compliance, especially early in the CHINS case. But those periods of compliance were interspersed with, and eventually overtaken by, drug use, criminal behavior, and, ultimately, incarceration. *See K.T.K.*, 989 N.E.2d at 1234 (focusing on mother's "habitual pattern of substance abuse and criminal conduct"). She repeatedly tested positive for methamphetamine and never participated in substance abuse treatment. During the CHINS case, Mother was arrested on two occasions for

serious felony charges (one of those occasions included felony neglect of a dependent charges) and is currently serving a four-year sentence.

[12] Mother notes that she has been sober recently—because she has been incarcerated. The trial court was not required to credit Mother for any sobriety during her incarceration. *See id.* (holding that trial court "was within its discretion to consider that the first eleven months of [mother's] sobriety were spent in prison where she would have not had access to any illegal substances, nor be subjected to the type of stressors . . . that would normally trigger a desire to pursue an escape from the pressures of everyday life that drugs often provide"). Moreover, while it is true that Mother will receive substance abuse treatment services once she is on probation, those services were available to her through the CHINS case before her incarceration and she failed to participate.

[13] Mother's substance abuse, criminal activity, and instability were a problem throughout the years-long CHINS case, and after her initial period of compliance, Mother showed no genuine indication that she wanted to try to remedy those issues. Therefore, the trial court did not err by finding that DCS proved by clear and convincing evidence that there is a reasonable probability

that the conditions resulting in the Children's removal and continued placement outside of her care and custody will not be remedied.[5]

[14] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.

---

[5] Mother also argues that the trial court erred by finding that a continuation of the parent-child relationship poses a threat to the well-being of the Children. As the statutory elements are phrased in the disjunctive and we have already found the first prong met, we need not and will not discuss the second. I.C. § 31-35-2-4(b)(2)(B). To the extent that Mother argues that DCS failed to meet the third prong—that the Children had twice been adjudicated CHINS in the past—DCS did not seek to terminate, and the trial court did not order termination, on the basis of this prong.